May it please the Court, my name is James Burnham and I'm here on behalf of Mr. Orthel. I'd like to try to reserve two minutes of my time for rebuttal. This Court should reverse the District Court and grant Mr. Orthel equitable tolling based on the detailed and compelling story of mental illness in his medical records and by applying the straightforward test this Court adopted in bills against Clark. In bills against Clark... What is my standard of review, Counsel? Your Honor, for factual findings it would be for clear error. For legal questions it would be de novo. And I would say in general it's abuse of discretion on whether to grant equitable tolling. Okay. So in this case we've got a pretty full factual record here and so we're allowing then the District Court a clearly erroneous deference. Correct? In general, yes, though I would say that legal rulings that are embedded within the District Court's factual findings are reviewed de novo. What legal ruling would you find in this particular matter was not appropriate such that we could move this past clearly erroneous? Certainly, Your Honor. I think that the — if you look at the District Court's order, one of the things the District Court said is that because Mr. Orthel's medical records described him as, quote, good at various points in time, that was tantamount to being capable of filing a habeas petition and satisfying — or I should say not satisfying the test this Court adopted in bills against Clark. I think that is a legal rule, and I think this Court can review that legal rule de novo and reverse the District Court by saying that merely — What legal rule? The legal rule would be that — I'm sorry, Your Honor? What legal rule are you talking about? The legal rule that I took away from the District Court's order is that when a mentally ill prisoner's internal medical records describe his mental functioning as good, that means he is not able to obtain — That's his discretionary decision. What was the legal rule that you think he left behind? I think the District Court's legal rule was what I just described. So that when — You think what he just did was a legal finding? Your Honor, I think if the District Court — if the Ninth Circuit had written — if this Court had written the District Court's order the way the District Court did, I think it would be adopting a legal rule that a statement in the medical records — That's your argument, that I'm supposed to swallow that. It is a argument. I have other arguments. And so another thing that I think this Court reviews de novo, Judge Smith, is whether the District Court should have ordered an evidentiary hearing. Well, if you're looking at bills to make that determination, I think you got a tough job, because the bills court was not even determining whether you needed an evidentiary hearing. In bills, they'd already determined they needed an evidentiary hearing, and they had one. All that we were saying in bills was, okay, here are some more things you need to think about. Besides an evidentiary hearing. When you look at bills, nobody even was arguing they needed a hearing. So they didn't even need to reach it. Respectfully, Judge Smith, whether they needed to reach it or not, they did reach it. And I think — I don't know that they reached it. Well, I can — to quote the opinion — Are you saying that that bill's opinion undid all of our circuit precedent in laws, Marshall and others, which suggest that a hearing is not necessary? Your Honor, I disagree with your characterization of laws, and I think Bill's built on those opinions. Laws v. Lamarck is very, very clear that if there is a credible allegation of mental illness, further factual development is required. Where in laws does it say they need to have a hearing? Your Honor, it does not say that they need to have a hearing. In fact, it says quite the opposite. It says they shall order discovery, expansion of the record, or evidentiary hearing, doesn't it? That — yes, I don't — That's exactly the wording. That — yes, I believe so. So they didn't say they needed a hearing in laws. And in Marshall, they didn't say they needed a hearing. That's correct. And so I guess I'm trying to figure out if when Bill's court simply says, was there a showing entitled to hearing, because he already got one, so they got that down, number one, then they moved to the two, three, and four, that that says we've undone all the precedent in the Ninth Circuit, and now you've got to have a hearing every time. Respectfully, Judge Smith, I don't think it's undone anything. I think what Bill is saying is that in certain circumstances where the allegations of mental illness are so strong, then you have to have an evidentiary hearing, which I would say is just an application of the test in Lamarck, and all that Bill's was doing was applying it in a more specific context. But it didn't need to be applied because a hearing was held in that case, right? So the issue was not squarely presented. Well, Judge Wynn, the hearing had been held in that case. And so I think what they were saying is that was the sort of case where you needed to have a hearing. And then they reversed because the district court had not applied the legal test that they articulated. I think if you look at three cases, it sort of makes this a little clearer, if you look them all together. So there's this Court's decision in Roberts, which is, you know, comes out, I think, like a week before the decision in Bills. And Roberts says that the guy, the prisoner is ineligible for equitable tolling because the record is clear that he was able to file for State habeas petitions. He was clearly able to do things like prepare a Federal habeas petition during the period for which he sought tolling. So no tolling for Roberts. Then you have Bills v. Clark, where this Court, I believe, said an evidentiary  wrong legal rule. Then you have Forbus v. Frankie, which is a case that's about a year old, where this Court reversed a district court's denial of equitable tolling outright and said that the prisoner was entitled to equitable tolling, applying the same standard of review, Judge Smith, that this Court is applying today. And I think if you look at those three cases, you have sort of a spectrum. You have cases where equitable tolling is per se required, which I would submit this case falls in that box because I think the records are very powerful in showing Mr. Orthel's mental illness. But even if you disagree with me about that, then you have a middle category, which is Bills, where an evidentiary hearing is required, because I think as this Court knows, and certainly as I have come to learn, these medical records are extremely complicated. They're difficult to understand. They were not prepared for the purpose of litigating equitable tolling in Federal court. They were prepared for the purpose of treating Mr. Orthel's illness. And they are the sorts of records where having everyone in, bringing medical professionals into the courtroom, and actually having a hearing would be extremely helpful to the Court. Yes, of course. I'm reading at ER 10, and this is a quote, Petitioner's medical records establish that he was a sufficiently competent and capable individual to manage his own affairs from June 1998 through 2005. That's a factual determination? Yes, Judge Hawkins. And what's clearly erroneous about it? Well, I think that with all respect to the district court, it just overlooks certain things in the medical records that the district court never discusses, which I don't fault the district court for, because the medical records are 2,000 pages long, written in pencil, as in many occasions, and very difficult to understand. And so I think if you look at the time period that the district court talked about, you know, on February 24, 2000, you've got an entry in the medical records where Mr. Orthold is saying that he believed the CIA wanted him to hurt Russians or they would hurt him. And that's at MER 1550. That would have been after the statute ran, right? Yes, Your Honor. That would be during the period for which he's seeking equitable tolling. I don't think there's much question at all that in the beginning of the statutory period, he was clearly mentally incapable, because he was residing in that entire period until, I believe, December 1999, in the Enhanced Outpatient Program, which is not even part of the normal prison. And it's a place that the prison is reserved for people with, quote, serious mental disorder characterized by increased delusional thinking, hallucinatory experiences, plus, and I'm quoting from the CDC, our mental health program guide, which is on the Internet. It's not in the excerpts of record, but it's publicly available. Plus, a, quote, demonstrated inability to program and work or educational assignments. And I see I'm at my two minutes, so.  You want to quit? You're glad to. Thank you, Your Honor. May it please the Court. Peggy Ruffray from the Attorney General's Office for Respondent. Your Honor, the district court's determination that Mr. Orthel was not entitled to equitable tolling because he failed to show and meet his burden that he was mentally incompetent for this entire 11-year period that's at issue was not clearly erroneous and should be upheld. The real question about time and tolling is the statute began to run in July of 1998. Is that correct? Correct. Yes. And would have run in July of 1999. Yes. The one-year statute. Yes. The real question is what was his level of competence during that period? And you heard my question to Mr. Burnham about the court's factual finding. What's the support for the record support for that factual determination? If you look at the records from that particular period, that was a time period when Mr. Orthel had, in fact, stabilized. He had been on medication for a number of years at that point in time, and at that point he had stabilized from about, I believe it was April or May of 1998. Throughout the next eight years he was stable. Certainly in July 1998, when the statute began, he was stable. And for the next eight-year period, if you look through these records, they say in remission, in remission, in remission, in remission, over and over and over during that eight-year period. It is true that later on he stopped taking his medication and then he had a serious psychotic break. That was long afterwards and really isn't relevant to the inquiry here, because he had eight years where he was fully competent to file a Federal habeas petition. During Well, but in February 2000, there is, in the ER at 11550, facts that suggest that he had thoughts then the CIA was trying to hurt him. That doesn't seem to say he was able to do what he needed to do. I don't have that particular page in front of me. There was some fluctuation during this eight-year period. Occasionally he would stop taking his medication for a month or two, and then the doctors were able to persuade him to go back on voluntarily. So there was some fluctuation. But, again, overall for this eight-year period, he was, for five of those years, he was at CCCMS, which is the lowest level that's in the general prison population. If we take, and I appreciated my colleague's question, if we take July 28, 1998, to record, which would suggest that he was not able to go forward and file what he needed to file? No. No. He was stable during that period of time. Sometimes we get cases where there's a claim of equitable tolling based on mental capacity, and it turns out during the relevant period of time that the petitioner filed papers in other proceedings, either in a collateral review proceeding in state court or whatever. Did that occur here? That did not occur here. But that's not the only way to show that a person is mentally competent. What else did Orthel do during the one year that Judge Smith is focused on that would suggest that he was capable of at least assisting someone in filing this for him? If I may. In order to concentrate just on that one year period. In November of 1998, his thought processes were clear, rational, and organized. He was not suicidal or delusional. Again, in December 1998, his thought process was clear and coherent. He had good memory and information. He was stable on medication. He was actively participating in therapy groups. That's helpful, but it doesn't respond to my question, which is, did he engage in any activity that would resemble the mental capacity and effort necessary to file a habeas causa proceeding? I think that actually is responsive, because the medical professionals who were evaluating him on a regular basis were saying his thought process is clear, his cognition is good, he was participating in these groups. I can also go on, though. I'm trying to suggest that the State loses if there's nothing that he did that would outside of just being evaluated and impressing therapists that his thought processes were clear. I'm just wondering if there is anything. Well, there is a little more. This is just outside the expiration of the one year period, September 1999. This is at MER 193. He's been diligently attending therapy groups in substance abuse, relapse prevention, and the lifers group. He's attending an electronics class. He's in occupational therapy. He's a bright young man who participates actively in class. He's begun a correspondence class in religious education. He wishes he had known that the psychiatric care and medication that he is receiving now could have helped him in the past and could have prevented the tragedy he caused to himself and others. So that was his mental state just after the one year period expired. And it actually improved after that when he got to the point where he was involved in this project reading books on tape for the blind. It required a very high level. Many prisoners who are competent couldn't do something like that. He also took 24 units of college classes. He made the honor roll almost every semester that showed his ability to read, write, think, study, take tests. He competently filled out various health care service requests and appeals and administrative forms within the prison, which showed his ability to fill out forms and advocate for himself. And in bills, the Court said that the defendant must simply have the ability to submit a minimally adequate habeas petition. In this case, he — all that was required was taking one claim that had been raised on State appeal by his attorney and filling out the Federal form. There was no original research required. There was no investigation necessary. It was a fairly straightforward task for him to do. And I think all of these tasks that he was able to complete within the prison, in addition to his consistently good evaluations of being in remission with some slight fluctuations over the years. It's true. But during that 8-year period, he was consistently described as being in remission, which I think clearly meets that minimal standard. I'd also like to say that this is a factual finding that I think has to be reviewed for clear error. We've cited seven cases in our brief where the specific finding that a person is not entitled to equitable tolling based on their mental issues is considered a factual finding by the district court that should be reviewed for clear error. So how do you respond to counsel's argument that Orthill or that he and Orthill make that Bill says you've got to have a hearing, period? I would disagree with that characterization. In Bill's, there was already a hearing by the time it got to the Ninth Circuit. And I just looked at the language of the final directive to the district court, and it was simply remanded for further reconsideration in light of the clarification of the standard that the court had announced. There are the other particular issues, the three other issues in Bill's. Is that what you're saying the standard was? Determine after considering the record where he has satisfied his burden whether he was in fact mentally impaired. Determine whether the mental impairment made it impossible to timely file on his own and consider whether he was otherwise diligent. I think what the court in Bill's did was it said we are clarifying the standard and the magistrate judge didn't apply this exact standard. So we want the magistrate judge to reconsider in light of that standard. And also they specifically said reconsider our determination of diligence. I think in this case there's simply been no showing of diligence whatsoever. There's no explanation for why suddenly 15 years after the conviction his mother decided to hire this lawyer. If that's what we could wait for, then the exception truly would swallow the rule. There would be no one-year statute of limitations. But another point on the question of having an evidentiary hearing, this was an experienced district court judge who has in fact ordered hearings with experts in other cases over our objection. She knows when she needs expert testimony. She reviewed these 2,200-plus pages. And the picture that emerged from the entire scenario is that for that 8-year period he was in remission. And certainly able to complete the minimal task of either hiring a lawyer or filing a habeas petition. The judge didn't need experts in this case. In ---- Thank you. I think your time has expired. Mr. Burnham. Thank you, Your Honor. Just a few very quick points. If you look at the records in this case, they are replete with evidence that Mr. Orthel can present well, but is deeply mentally ill. In fact, when he first entered the prison, he was given a GAF score of 80, but then immediately proceeded to engage in parasuicidal acts and severely psychotic episodes. That relates to my next point, which is that when an internal medical record describes Mr. Orthel as in remission, that doesn't mean that he's doing terrific and is capable of figuring out that postconviction review exists, figuring out that he needs to do something about it, and figuring out how to do it.  And I think that just sort of underscores the flaw in the district court's order and in the State's argument here, that it equates moments when Mr. Orthel is not actively hallucinating with moments when he can file for Federal habeas. My last point would be that if Mr. Orthel is not entitled to equitable tolling, then based on these records, or at least an evidentiary hearing to probe whether he is, it is difficult for me to imagine any inmate who would be. Mentally ill inmates do not make a record of their mental illness so that they can future litigate equitable tolling. The whole point of equitable tolling for mentally ill inmates is that they don't know they need to do that. And these medical records paint a picture of a deeply ill man. And I think that in this case, at the very least, the district court needed to do further investigation before she denied Mr. Orthel his single chance to file a habeas petition. We're not talking about opening the floodgates to everybody who's in the California Prison System's mental illness program. We're talking about one petition for a mentally ill prisoner who I think we can all agree, at least for certain times in this period, was clearly incapable of comprehending the Federal post-conviction process. Unless the Court has any questions, thank you. Mr. Burnham, I pause only to say as a part of our court program, which I think other sister circuits deeply appreciate, you've been participating in this on the pro bono appointment, and we thank you deeply for taking that appointment and doing the effort and the work that you've put in in making these arguments and presenting this case. Our deepest thank you and consideration. Thank you, Your Honor. It's our pleasure. Otherwise, this case is submitted. Case 12-17165. Thank you.
judges: Hawkins, Smith, Nguyen